GEORGE G. SILL *vs.* WILLIAM S. WHITE.

Hartford Dist., Oct. T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and PRENTICE, Js.

The wife of *W* died, leaving real estate in which he had a life estate as tenant by the curtesy. She left a will by which she gave him all her property for life, with a right to use whatever was necessary for his comfortable support, and remainder over. He did nothing in the way of electing whether he would retain the life estate given him by the law as tenant by the curtesy or take that given him by the will. The

latter was attachable for his debts; the former was protected from attachment by statute so long as any children of the marriage lived, and there were several. Held that he would be regarded as holding under the former estate and that his life interest in the real estate was not open to attachment.

And held that, not being open to attachment, it could not be taken by a judgment lien and foreclosure.

Also held that the right given to W by the will to use whatever of the property was needed for his comfortable support, did not enlarge the life estate given into a fee.

Also that W's right under the will to use the property for his support was not an interest that could have been attached.

[Argued October 5th—decided December 10th, 1892.]

Suit to foreclose a judgment lien; brought to the Superior Court in Hartford County, and heard before *F. B. Hall, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff.

*Plaintiff, pro se.*

1. While the wife could not, perhaps, lessen the husband's estate, she could and did enlarge it, making it a fee absolute or contingent. Can it be claimed that the defendant takes his life estate by law and the right to dispose of it by will, and that these two rights are separate and distinct? Granting this proposition to be so, it would appear that the plaintiff would have a right to foreclose whatever interest the defendant has in the real estate under the will. It makes no difference how little or how great it may be. The defendant's right to dispose of the property for his support, is an interest that may be foreclosed.

2. The privilege of using the estate, if it has any meaning, is that the defendant may dispose of it for his support if needed; that is, he may sell it—a part or the whole. It has been determined that where an estate for life is devised with power in the devisee to dispose of it at his own discretion and for his own use, he takes a fee. *Hull* v. *Culver,* 34 Conn., 403; *McKenzie's App. from Probate,* 41 id., 607; *Lewis* v. *Palmer,* 46 id., 454. If it is claimed that the power to sell is not absolute but contingent upon the de-

fendant's necessities, it appears that he is not closely restricted, for it says "a good and comfortable support."

3. The two life estates vesting in the same person become merged. This is elementary law, and is universally true unless for some good reason equity will keep the two estates separate. That reason does not exist in this case. Equity will not keep them apart to aid a debtor and protect his property from a creditor.

4. The statute with regard to judgment liens provides that they shall not take effect where the land could not have been levied upon on an execution on the same judgment. The question then is whether the defendant's life estate was attachable for his debts. It is claimed that his life estate as tenant by the curtesy was exempted from attachment by Gen. Statutes, § 1165. But this exemption of property from attachment for debts is against the policy of our law, which favors the subjection of all property to the owner's debts. An estate by the curtesy was liable to attachment at common law. *Johnson* v. *Chapman*, 35 Conn., 550. An exemption of it by statute should be strictly construed. And in determining whether the defendant is to be regarded as holding under the will or as tenant by the curtesy the court should be influenced by the policy of the law.

*T. E. Steele,* for the appellee.

PRENTICE, J.  The defendant, William S. White, and his late wife, Mary E. White, were married in 1838, and lived together as husband and wife until May 9th, 1890, when Mrs. White died, leaving her husband surviving. As the issue of this marriage several children were born. Some of these children are now living. In 1879 Mrs. White purchased, in her own name, certain real estate, which she continued to own, and upon which she with the defendant and their children thereafter resided until her death. Mrs. White left a will, executed in 1889, which was duly probated. The defendant was executor thereof and settled the estate. By the first paragraph of her will Mrs. White pro-

vided for the payment of her debts and funeral charges. In the second she made a bequest to her daughter of a few articles of her personal effects. The third and fourth paragraphs are as follows:—

"3d. I give and bequeath the use, income and improvement of all the rest and residue of my estate, both real and personal, of which I die seized and possessed, to my husband, William S. White, to be held by him during his life, with the privilege of using so much of my said estate as is necessary to secure to him a good and comfortable support.

"4th. At the decease of my said husband, if he survives me, or at my decease if I survive him, I give and devise all my said property then remaining as follows, to wit:—My said property shall be divided into nine equal parts, five of which I give to my daughter Isabelle, two parts to my son Charles A. White, one part to Leverett H. White, and the other part I give to Sarah E. White, widow of my deceased son Frederick W. White, to be held by them and their heirs forever."

Mrs. White's estate consisted of the aforesaid real estate, a deposit of $1,600 in a savings bank, and her personal effects.

On October 19th, 1890, the plaintiff recovered a judgment against the defendant upon his indorsement of a certain promissory note, for the sum of $6,300.89, which, with the interest thereon, remains wholly unpaid. On the 28th of October, 1890, the plaintiff, to satisfy said judgment, filed a lien on said real estate. This complaint is brought to foreclose the lien.

The question before the court is, whether the defendant has any title or interest in said premises which can be taken upon the foreclosure proceedings.

Mr. White, upon his wife's decease, became, by force of law, a tenant by the curtesy in her real estate. By right of this tenancy he was entitled to the use for his life of all her lands. Mrs. White's will purports to give to him "the use, income and improvement of all the rest, residue and remainder of her estate"—including the premises in contro-

versy, "to be held by him during his life." She then gives to him the privilege of using so much of her estate as should be necessary to secure to him a good and comfortable support. Lastly, she devises the remainder, after the decease of her husband, to her children and the widow of her deceased son. Here are words aptly and most emphatically creating a life estate in Mr. White, a conditional power coupled with it, and a gift over of the remainder.

That there is no rule of law which converts a life estate expressly created into a fee absolute or qualified, or into any other form of estate greater than a life estate, by reason of there being coupled with it a power of sale, has been repeatedly declared by this court. *Glover* v. *Stillson*, 56 Conn., 316; *Peckham* v. *Lego*, 57 id., 553; *Hull* v. *Holloway*, 58 id., 210. See also *Stuart* v. *Walker*, 72 Maine, 145; *Walsh* v. *Woodbury*, 144 Mass., 542.

The intention of this testator to create a life estate merely in her husband is manifest. There is nothing in the terms of the will to defeat this intention. In *Peckham* v. *Lego*, *supra*, the precise language and conditions before us were considered, and it was held that a life estate only was created. The reasoning of the court in that case, and in the cases of *Glover* v. *Stillson* and *Hull* v. *Holloway*, above cited, wherein less apt words and more sweeping powers were held not to create a greater than a life estate, need not be here repeated. It is clear that Mrs. White's will contains an attempted gift to her husband of a life estate, and of a life estate only.

Upon this aspect of the case the plaintiff's contention is that the effect of the will, under all the circumstances, has been to vest in the defendant a life estate thereunder, in the place of the life estate which would otherwise be his, so that he now holds under the will and not as a tenant by the curtesy. The argument is, that as the will annexes to the life estate a privilege beneficial to the defendant, to wit, the power to use for his needed support, and as he must accept the devise as a whole and not in fractions, he must, in the absence of proof to the contrary, be presumed to have ac-

cepted the devise. A sufficient answer to this contention appears in the very line of the reasoning it implies. An estate by the curtesy, as we shall have occasion to notice later, has appurtenant to it certain beneficial features not appurtenant to an ordinary life estate. If it is to be presumed that the mere beneficial estate is accepted, whence arises the presumption that the life estate under the will is the more beneficial to Mr. White? If the plaintiff's contention is to be fruitful of the desired results it would seem difficult to regard that estate the more beneficial of which alone he can be deprived.

If we give this line of reasoning a closer scrutiny we observe that its result is to deprive a husband of his tenancy by the curtesy without any act whatsoever on his part. Seized of a freehold estate before the wife's decease, and entitled to his life use the moment death ensues, he finds himself divested by a mere act of the wife aided by legal presumption. Plainly, what the law casts upon the surviving husband is something which cannot be taken from him save by some act of his own. There is no statutory requirement that one who is entitled to a life estate as a tenant by the curtesy, and is given the same estate by law, shall elect under which he will hold. He is privileged to silence. In the case at bar Mr. White has said nothing, has done nothing. He has remained passive and silent, as he had a right to do. He has not even indicated that he proposes to avail himself of the privileges which the will gives him. Manifestly he cannot thus be held to have lost his life estate by the curtesy.

The real objection to this contention, however, lies deeper. The devise of Mrs. White of a life estate in her lands for the life of her husband was an attempt to give what she did not have to give. It was not in her power to direct where this estate should vest. Upon this subject the law spoke, and spoke unqualifiedly. It was, furthermore, an attempt to give to one who by a higher right than the act of the testator was to become, upon the testator's decease, entitled to the estate purported to be given. Before his wife's

decease Mr. White was a tenant by the curtesy initiate in her lands. As such tenant he was seized of a freehold estate in his own right, and the interest of his wife was a mere reversionary interest, depending upon the life estate of her husband. *Fitzgerald* v. *Brennan*, 57 Conn., 511.

The plaintiff further suggests that although the defendant continues to hold his life estate as tenant by the curtesy, there is still an interest in him which he holds under the will only, and that this is not exempt.

Admitting, for the sake of the argument, that this is so, the difficulty nevertheless remains, that this interest is one purely personal to the defendant. It is one which, in its very nature, can inure to the benefit of no one else. Clearly, a right to sell, measured by and for the satisfaction of Mr. White's personal wants, is nothing of which any creditor can avail himself. This, without going further, furnishes a sufficient answer to this contention.

As the defendant holds as tenant by the curtesy his interest cannot be taken upon attachment or execution against him during the life of any of the children, except for certain classes of debts, to which the plaintiff's does not belong. That such is the scope of the exemption contained in section 1165 of the General Statutes is clear, both from its language and from the history of prior legislation out of which it has been evolved. Such has been recognized to be its effect by this court. *Johnson* v. *Chapman*, 35 Conn., 550; *Jackson* v. *Hubbard*, 36 id., 10.

The premises not being liable to be taken upon execution to satisfy the plaintiff's judgment, they cannot be taken by foreclosure of a judgment lien. Gen. Statutes, § 3034.

There was no error in the judgment appealed from.

In this opinion ANDREWS, C. J., and TORRANCE, J., concurred. SEYMOUR, J., concurred in the result, but died before the opinion was written.

CARPENTER, J., dissenting. My view of this case is, that the defendant ought to be regarded as holding under

the will, rather than under the law as tenant by the curtesy. At common law this would clearly be so. The life tenant, made so by law, was not impeachable for waste, unless the will made him so; the principle of the common law being that when a life estate is created by act of the parties, the life tenant is not impeachable for waste unless the instrument creating the estate prohibits the commission of waste. Otherwise in life estates created by operation of law. In such cases the law protects the reversioner by restraining waste. A statute now restrains waste in life estates, created by will or other instrument, unless the instrument creating the estate allows it; so that all life estates are now practically upon the same footing. Assuming then that in this case the estate created by the will and the estate created by the law are identical, and that the circumstances are such as to justify the tenant in holding under the one or the other, as he may elect, ought he not to make his election? And, in the absence of an election, would or would not the law presume, in the interest of creditors, and to effectuate a favorite principle of the law that all a man's property should be liable for his debts, that he holds under the will? There certainly can be little hardship in this, for he can protect himself, if need be, by rejecting the provisions of the will, and fall back upon his legal rights.

But the exigencies of this case do not call for an answer to these questions; for the legal estate and that created by the will are not identical; and the defendant has practically made his election to hold under the will. Under the will he has more than a life estate. He has a legal right to dispose of a part or even the whole of the real estate, if need be, "to secure to him a good and comfortable support." As tenant by the curtesy he has no such right.

Moreover, by his silence and conduct he has elected to accept the legacy. He was the executor, accepted the trust, proved the will, and has settled the estate. There is no intimation in the record that he refused to accept the legacy and gave notice to creditors and others interested in the estate that he relied solely upon the estate conferred upon

him by law.   But if it were not so, the devise being favorable to him, the law presumes an acceptance until the contrary appears.

One word more.   It is now held that he may elect to hold as a tenant by the curtesy and thereby defeat the claims of creditors.   If hereafter he should find it needful in order to secure a comfortable support, to sell some part of the estate, and a controversy should arise between the reversioner and himself, is the court prepared to hold that, for the purpose of that case, he might hold under the provisions of the will?